**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-2129**

_____

CHRIS HILL,

        Plaintiff - Appellant,

v.

CERTEX USA, INC.,

        Defendant - Appellee.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:19-cv-00422-CCE-JEP)

_____

Argued:  January 24, 2023                  Decided:  February 15, 2023

_____

Before GREGORY, Chief Judge, and WYNN and THACKER, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Thacker concurred.

_____

**ARGUED:**  Andrew Joseph Schwaba, SCHWABA LAW FIRM, Charlotte, North Carolina, for Appellant.  Luke Paul Sbarra, HEDRICK GARDNER KINCHELOE & GAROFALO, LLP, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  M. Duane Jones, Kari M. Loomer, HEDRICK GARDNER KINCHELOE & GAROFALO, LLP, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Plaintiff Chris Hill was seriously injured at work when two steel plates fell on him after the sling he was using to move the plates failed. He sued the manufacturer of the sling, Certex USA, Inc. ("Certex"). The district court granted summary judgment to Certex. We affirm.

I.

The facts, taken in the light most favorable to Hill, are as follows.

Hill, a resident of North Carolina, began working for Tencarva Machinery Company, LLC ("Tencarva"), in 2008. Tencarva assembles industrial pumps, and Hill worked as a fabricator, making custom pump stations.

Tencarva began purchasing synthetic nylon web slings for use in moving materials around its workshop from Certex, an Arizona corporation, around 2010. In late September 2016, Hill attempted to use one such sling to move two carbon steel plates. The sling was essentially a one-inch-wide, three-foot-long strap made from two-ply bonded nylon thread with a flat loop—an eye—at each end. Each carbon steel plate was nearly seven feet tall, five feet wide, and half an inch thick, and weighed approximately 700 pounds. The plates also each had a thirty-inch-diameter hole "off-set from the center in one end." J.A. 704.[1]

Hill inspected the sling and saw no problems with it—it looked brand new and had been used at most for a few weeks. According to Hill, the same sling had been used to offload the plates from shipping the day before. He felt around the edges of the holes in the

_____

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

2

plates—where the plates would contact the sling—for sharp edges, burrs, or other rough abrasions, and finding none, used a choker hitch to secure the plates in the sling. This meant that Hill threaded the sling through the plates' holes, ran one eye of the sling through the other, and then cinched the sling to form a tight loop across the space between the hole and edge of the plates. He then attached the other eye onto a gantry crane hook.

Hill used the sling and crane to transfer the plates into an aisle of the workshop, where he would be able to access them with a forklift. He moved the plates to just barely rest on the floor in a vertical position. At that point, Hill was standing about eight to ten feet from the plates, which he believed was a safe distance. He turned around to retrieve the forklift. But as he did so, the sling broke and the plates swung around, hit him in the back, and fell on top of him, pinning him to the ground face-down. He was knocked unconscious and suffered serious injuries to his back, hip, ankle, head, and teeth. Those injuries required multiple surgeries, and he has not fully recovered from them.

Certex manufactured the sling in question in June 2015. When Tencarva purchased the sling from Certex, the sling included a General Conditions sheet; a laminated tag stating the weight-load limits (2,480 pounds for a choker hitch); a warning label attached to the weight-load tag; and two Safety Bulletins—one in English and one in Spanish—folded inside a plastic bag attached to the sling. Although Certex normally produced its own warning labels, in June 2015 it was experiencing production issues related to those tags, so the warning label attached to slings manufactured at that time was one produced by the Web Sling and Tie Down Association ("WSTDA").

3

The Certex warning label that had previously been in use and the WSTDA warning label used on the sling in question had a key difference that is the subject of much of the dispute in this case. Certex's warning label instructed users to "ALWAYS protect [the] sling from cuts. Avoid *sharp edges* and corners, pointed objects, [and] rough surfaces." J.A. 597 (italics added). By contrast, the WSTDA warning label instructed users to "ALWAYS protect slings in contact with *edges*, corners, protrusions or abrasive surfaces with materials of sufficient strength, thickness and construction to prevent damage." J.A. 558 (italics added). Elsewhere, it stated in bold font that "[w]eb slings must ALWAYS be protected from being cut or damaged by corners, *edges*, protrusions or abrasive surfaces with protection sufficient for the intended purpose." *Id.* (italics added). In neither case did the WSTDA warning label qualify "edges" with the word "sharp."[2]

The Safety Bulletin, also produced by the WSTDA, provided the same warning about edges as the WSTDA warning tag, with no qualification that the edges must be "sharp." The Safety Bulletin further clarified that "[s]ynthetic web slings can be damaged, abraded or cut as tension and compression between the sling, the connection points and the load develops. Surfaces in contact with the sling *do not have to be very abrasive or have*

---

[2] The Certex warning label also referred users to the "attached Operators Instructions for other important information." J.A. 597. As there were no "Operators Instructions" attached to its slings, it is unclear whether the label meant to refer to the Safety Bulletin (which was attached to the sling, but not specifically labeled "instructions") or the Warning and Application Instructions (which were not attached to slings—they were part of the product catalog—but used the word "Instructions"). The Warning and Application Instructions, like Certex's warning label, advised users to "[a]void *sharp* edges [and] corners, pointed objects, and rough surfaces." J.A. 376 (emphasis added). The WSTDA warning label, by contrast, did not refer users to any "Operators Instructions." Instead, it explicitly referred to the Safety Bulletin provided with Certex slings. J.A. 557.

*'razor' sharp edges* in order to create the conditions for sling failure." J.A. 599–600 (emphasis added). The Safety Bulletin recommended different ways to protect the sling, such as using commercially available padding.

Hill testified in his deposition that he had read and understood the warning tag and Safety Bulletin attached to the sling in question at some point before the accident. He also explained that he received annual safety training from Tencarva on how to use lifting equipment, including a review of warnings and industry standards.

Hill sued Certex in North Carolina state court in 2019, bringing three claims: breach of an express warranty, breach of the implied warranty of merchantability, and negligence. Certex removed the case to federal court based on diversity jurisdiction. It then moved for summary judgment, and Hill cross-moved for partial summary judgment. The district court granted Certex's motion and dismissed the case with prejudice. *See Hill v. Certex USA, Inc.*, No. 1:19-CV-422, 2020 WL 6193666, at \*1–2 (M.D.N.C. Sept. 28, 2020). Hill timely appealed, challenging only the district court's decisions on the implied-warranty-of-merchantability and negligence claims.

II.

Our review of the district court's summary-judgment decision is de novo, and we must "view the facts in the light most favorable to the nonmoving party"—here, Hill. *Whitmire v. S. Farm Bureau Life Ins. Co.*, 52 F.4th 153, 157 (4th Cir. 2022) (quoting *Kitchen v. Upshaw*, 286 F.3d 179, 182 (4th Cir. 2002)). "Summary judgment is appropriate whenever 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

5

The parties agree that in this diversity-jurisdiction case, North Carolina law applies and controls our analysis. *See Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 n.4 (4th Cir. 2019) (noting that where the parties agree that a certain State's law applies, "we need not inquire further into the choice-of-law question[]").

## A.

First, upon considering Hill's claim for breach of the implied warranty of merchantability, we affirm the district court's decision to grant summary judgment to Certex on this claim.

To establish a breach of the implied warranty of merchantability, a plaintiff must prove, among other things, "that the goods bought and sold were subject to" such an implied warranty. *DeWitt v. Eveready Battery Co.*, 565 S.E.2d 140, 147 (N.C. 2002) (quoting *Morrison v. Sears, Roebuck & Co.*, 354 S.E.2d 495, 497 (N.C. 1987)). In North Carolina, a warranty of merchantability is implied in a contract for the sale of goods unless disclaimed. N.C. Gen. Stat. § 25-2-314(1). And the employee of a good's buyer may bring an implied-warranty-of-merchantability claim against the good's manufacturer regardless of any lack of privity of contract. *Id.* § 99B-2(b).

For a seller to disclaim the implied warranty of merchantability, "the [disclaimer] language must mention merchantability and in case of a writing must be conspicuous." *Id.* § 25-2-316(2). By statute, "'[c]onspicuous' . . . means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it," such as

6

"[a] heading in capitals equal to or greater in size than the surrounding text." *Id.* § 25-1-201(10).

As noted, Certex included a "General Conditions" sheet with the sling it sold to Tencarva. That sheet set forth conditions of the sale, including the following:

> Except for the warranty that the goods are made in a workmanlike manner and in accordance with the specifications thereof supplied or agreed to by [the] buyer[,] SELLER MAKES NO WARRANTY EXPRESS OR IMPLIED; AND ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WHICH EXCEEDS THE FORGOING [sic] WARRANTY IS HERBY [sic] DISCLAIMED BY SELLER AND EXCLUDED FROM THIS AGREEMENT.

J.A. 404. The text of the "General Conditions" sheet otherwise uses regular capitalization. The district court concluded that this language sufficed to provide a conspicuous disclaimer of any implied warranty of merchantability. *Hill*, 2020 WL 6193666, at *1.

On appeal, Hill concedes that the disclaimer was conspicuous. But he argues that it does not apply. He states that Certex did not disclaim a warranty "that the goods are made . . . in accordance with the specifications thereof supplied or agreed to by [the] buyer." J.A. 404. Yet he points to no evidence that the sling was not made to the *buyer* (Tencarva)'s specifications. Instead, he argues that the sling was not made in accordance with the specifications supplied *by Certex*—namely, the weight limit. But the exception to the disclaimer does not refer to specifications provided by Certex, so Hill's argument is without merit.

## B.

We also affirm the district court's decision to grant summary judgment to Certex on Hill's negligent-failure-to-warn-or-instruct claim.

7

In North Carolina, a plaintiff seeking to support a products-liability claim "based upon inadequate warning or instruction" must prove several elements, including "that the manufacturer or seller acted unreasonably in failing to provide such warning or instruction" and "that the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought." N.C. Gen. Stat. § 99B-5(a).

Hill argues that the district court erroneously determined that his injury was not proximately caused by Certex's negligence. But the district court did not reach the question of causation because it concluded that Certex gave Hill adequate warning. *Hill*, 2020 WL 6193666, at *2. And indeed, the undisputed facts show that the warnings provided with the sling that Hill used on the day of the accident—including both the warning label and the Safety Bulletin—instructed users to "ALWAYS" protect the sling from *any* edge, not just a "sharp" edge. J.A. 558, 598. There is no dispute that Hill failed to use any protective padding. Further, Hill testified that he read and understood the sling's warning tag and Safety Bulletin. "Thus, Mr. Hill was aware of the very information he claims Certex was negligent in failing to include on the warning tag." *Hill*, 2020 WL 6193666, at *2.

Hill nevertheless contends that Certex's history of providing warnings only against *sharp* edges created "critical confusion" that can support liability. Opening Br. at 17. He points to evidence that Hill and his coworkers believed that only *sharp* edges posed a problem. Further, he cites a 2009 article by one of his experts, Thomas Mackey, alerting the industry to "the dangers of sling cutting," J.A. 971, as well as Mackey's deposition testimony that his tests showed that "slings will separate on a corner," even one that is not sharp, J.A. 929. And Hill presents expert testimony that "an experienced user" will not

8

reread a warning label,[3] such that it did not matter if an updated label was attached to the sling Hill actually used. J.A. 1090. In other words, Hill argues that Certex's earlier warning tags started the ball rolling when they specified that only sharp edges posed an issue, and Certex needed to do something more than update its warning label by removing the word "sharp" to terminate the causal path.

It may well be a best practice for companies aware of new dangers to bring them to the attention of their products' users explicitly, such as through a training, rather than merely through updating a warning label. But Hill points to no *legal* authority that North Carolina law looks beyond the adequacy of the warning provided with the product in question. As noted, Hill must show that Certex "acted unreasonably in failing to provide [adequate] warning or instruction" and this failure "was a proximate cause of" his injuries. N.C. Gen. Stat. § 99B-5(a).

Further, North Carolina law clarifies that Certex cannot be held liable where "[t]he use of the product giving rise to the product liability action *was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping*, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings." *Id.* § 99B-4(1)[4] (emphasis added). The statute does not refer to *earlier* warnings or

---

[3] Of course, Hill himself testified that he *did* read the warning label attached to the sling in question.

[4] This statute "'merely codif[ies] the common law doctrine of contributory negligence' as it applies in products liability actions." *Nicholson v. Am. Safety Util. Corp.*, 488 S.E.2d 240, 243 (N.C. 1997) (quoting *Champs Convenience Stores, Inc. v. United*

instructions, but rather to those provided alongside the product that is the subject of the lawsuit. And even if North Carolina law has created such an exception to the plain language of the statute—a question we do not consider—Hill has cited no authority and made no argument on that point, thus waiving it.[5]

Hill does assert that our opinion in *Fontenot v. Taser International* supports his argument that, under North Carolina law, Certex needed to do more than quietly update its warning label. But that case is readily distinguishable. In *Fontenot*, a teenager died from cardiac arrest after a police officer used a taser on his chest. *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 321 (4th Cir. 2013). The police officer aimed at the teenager's chest based on training provided by the police department, which in turn had relied on instructional materials supplied by the manufacturer (and defendant), Taser International. *Id.* at 321–24.

But Taser International knew better: it was aware of studies "in which researchers had concluded that the device posed a risk of ventricular fibrillation, a cause of cardiac

---

*Chem. Co.*, 406 S.E.2d 856, 860 (N.C. 1991)). We recognize that in many cases, whether a plaintiff was contributorily negligent is a question for the jury. *Id.* at 244. But here, the warning label and Safety Bulletin attached to the sling explicitly advised Hill to "ALWAYS protect slings in contact with edges." J.A. 558, 598. There is no dispute that the sling was placed in contact with the edges of the plates and that Hill did not protect it. And on appeal, Hill has presented no argument that there is a jury question here, beyond his contention that Certex's earlier warnings about "sharp" edges created confusion.

[5] *See* Fed. R. App. P. 28(a)(8)(A) (arguments in opening brief must include citations to supporting authorities); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ("Failure to comply with the specific dictates of [Rule 28(a)(8)(A)] with respect to a particular claim triggers abandonment of that claim on appeal."); *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (noting the mandatory nature of Rule 28(a)(8)(A)); *Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 318 (4th Cir. 2010) (per curiam) ("[W]e will not make arguments for [a party] that it did not make in its briefs." (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001))).

arrest, especially when the electrical current from the taser was applied near the subject's heart." *Id.* at 321. Yet it "did not alter its training materials to warn users of the [type of] taser [in question] that shots to a person's chest could result in ventricular fibrillation, or that use of the taser near a person's heart should be avoided based on that risk." *Id.* at 324–25. In fact, while Taser International "revised its training materials and the [applicable] taser operating manual before [the teenager]'s death, those revised documents did not provide warnings concerning the risk of ventricular fibrillation or cardiac arrest when the taser is fired at a suspect's chest," and the revised training material even "included a visual depiction of a police officer aiming the taser at the suspect's chest." *Id.* at 324 n.4. We concluded that Taser International could be held liable for a negligent-failure-to-warn claim under those circumstances. *Id.* at 336.

So *Fontenot* demonstrates that, where a product manufacturer is aware that a particular use of its product could lead to harm, but fails to update its warnings accordingly (and indeed, specifically suggests that such use is proper), it can be held liable when the anticipated harm occurs. *Fontenot* simply does not apply in this case, where the sling in question included an updated warning that Hill did not follow.

Hill further briefly argues that the warnings were inadequate because *even if* he had followed the advice to pad the sling, it would have failed. According to his expert, although Certex represented that the sling had a choker-hitch weight limit of 2,480 pounds—which should have been more than enough to support the 1,400 pounds of material Hill was trying to move—Certex failed to warn Hill that a corner or edge "should not be allowed to contact any part of the sling eye" because, if it does, the load limit is cut in half (here, to 1,240

11

pounds). J.A. 1017. But Hill forfeited this argument by failing to raise it below.[6] *Ferguson v. City of Charleston*, 308 F.3d 380, 396 (4th Cir. 2002).

Finally, Hill contends that Certex had a duty to *instruct*, not just a duty to warn, pursuant to a North Carolina statute that refers to "the failure to provide adequate warning *or instruction*." N.C. Gen. Stat. § 99B-5(a) (emphasis added). And in his view, this duty meant that Certex needed to "effectively communicate" to end users "that any edge . . . could have cut the sling" by providing instruction "beyond warnings." Opening Br. at 27. But he cites no legal authority to support the idea that, under North Carolina law, a product manufacturer must not only provide a proper warning label, but also offer instructions in the form of training to end users—and that if it does not, it can be held liable even where the end user read and understood, but failed to apply, the written warnings. In other words, he cites no authority to support the notion that the passing reference to "instruction" in section 99B-5(a) trumps North Carolina's law of contributory negligence. Again, in the

---

[6] At oral argument, counsel claimed that Hill did raise this matter below, and pointed to several locations in the Joint Appendix. But those references are only to testimony or reports from Hill's experts. Counsel failed to cite any *legal* arguments made below to preserve this issue. And our review of the summary-judgment briefing demonstrates that the legal arguments Hill pressed below on the matter of negligence focused entirely on the question of "sharp" edges, not on the effect of the load configuration on the weight limit. "'If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court.' In other words, the party must raise the argument in a manner sufficient 'to alert the district court to the specific reason' the party seeks relief." *CoreTel Va., LLC v. Verizon Va., LLC*, 808 F.3d 978, 988 (4th Cir. 2015) (alterations and citation omitted) (first quoting *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014); then quoting *United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012)). Hill failed to do so here.

absence of citations to legal authorities supporting his position, Hill has waived our consideration of this argument. *See* Fed. R. App. P. 28(a)(8)(A).

III.

For the reasons stated, we affirm the decision of the district court.

*AFFIRMED*